Good morning. Good morning, your honors. May it please the court, Albert Chow on behalf of the petitioner Wendian Xu. Your honors, this is an asylum case, specifically about religious persecution. And in this case, the main issue here is credibility. We believe, though, that under a totality of the circumstances, that the inconsistencies that were cited by the board do not support an adverse credibility finding. There were essentially three inconsistencies cited by the board to support their finding. The first one is a little interesting simply because it was the inconsistency on the household registration wherein he stated on the household register listed him as a quality control person for a leather products company when he had testified that he was a chemistry teacher. And the board doesn't really find an adverse credibility based upon the inconsistency, but that he did not immediately disclose this inconsistency to the court. And in this case, essentially, when he was asked the question, why is there an inconsistency here, he immediately told the judge that, well, yeah, I mean, that's why. It was there because a middleman had arranged for the household register to be altered. So he did immediately disclose this inconsistency once he was asked. And essentially, he had done that on his application when, or the application when he was listed as what is your employment, he had listed himself as a teacher. Can I shift the credibility to a slightly different aspect of this? Is it appropriate for us to consider the value of the 2012 letters from Liang and Xu's mother since you didn't mention them in your brief? I believe I did mention the letters in my brief, Your Honor. Right. The part of the inconsistency here was how often did the police come to his home about his mother. And in his mother's letter, which was written in January of 2015, she says the last time they came was November of 2014. But the hearing took place in June of 2016, a year and a half later. And so during the hearing, he was asked, are they currently coming to your house? Yes. How often? Every few weeks. This is not an inconsistency. There was a year and a half gap time between the mom's letter when it was written and the hearing itself. Things can change in a year and a half. There is no inconsistency on this portion, Your Honor. Was there some testimony about his being beaten and the like also in these letters? Or were those different letters? No, there were two letters by the mother. Right. Right. And in the letters, the mother did mention the persecution that he suffered, the fact that he was beaten, et cetera. Did the BIA address that at all? In other words, at least to me, it seemed like they focused more on the chemistry issues and didn't really focus on whether or not there was past persecution because it got off on this other tangent. Is that a correct analysis? Yes. I mean, the main issue that the board focused on was simply adverse credibility. If we're going to move on to persecution, then in my letter under 28J, I submitted a recent case, Globey Sessions, which spoke about how religious persecution must be judged differently. I guess then it must be judged not just based on physical harm but actual religious harm. The fact that he had to sign a guarantee letter saying that he could not attend the home church anymore, the fact that he had to report every week to police so they could keep an eye on him. But with respect, for purposes of past persecution, we don't treat that the same as a beating, do we? In other words, if somebody can't go to the church they want to go, do we treat that per se without anything else as past persecution? Well, I believe in Globey Sessions. I don't believe it's per se, but I think in the case of Globey Sessions, they certainly stated that that would be the major relevant factor in religious persecution cases, not necessarily whatever physical harm or injury someone might have suffered. Can I take you back to the adverse credibility determination? I guess let's say that we were inclined to agree with you on the inconsistency with respect to the frequency of the visits. That one seemed maybe the weakest of them. But I guess I will confess that I was troubled by, when I read your client's testimony, attempting to explain his, I don't know if you call it like his general knowledge of chemistry. I mean, I don't think the questions put by the IJ were unfair. It wasn't like he or she, they weren't asking for some crazy formula, like how would I know? I was just a high school chemistry teacher. They seemed very basic questions, and your client's testimony was completely incoherent. I mean, I felt even just reading the cold record, boy, I would be suspicious of this guy's credibility if he claimed to be a chemistry teacher and this is what he came up with in response to those questions. So help me understand why you think we're not obligated to kind of give some deference to that. I understand that, Your Honor, and honestly, that testimony was very disappointing. I agree with that. I think, you know, I cited the case of Zahidi v. Ines, which stood for the proposition that documentary evidence can independently establish the elements of an asylum claim. In this case, the petitioner submitted two documents, his graduation certificate as well as his teacher qualification certificate. That is hard evidence that we have here. And the IJ did not make any findings that either of those documents were unreliable in any sense. So that's number one. Number two, I completely understand where you're coming from. It was disappointing, but he had been five years removed from being a chemistry teacher, a high school chemistry teacher. So he had not studied anything about chemistry in five years. I understand that these were somewhat basic questions, but I don't think that that speaks overall to whether or not he was an actual chemistry teacher or not. I mean, you know, sometimes people simply just freeze. They just can't think of whatever it is, even if it's something that's very simple, especially in a public speaking context or in something like a hearing. I think that's happened to everybody sometimes where you said, you know, my mind just simply went blank. I just couldn't explain it. But in this case, Your Honor, what I'm saying is that the hard evidence cannot be ignored, despite what his answers were to those seemingly simple questions. How do we deal with the fact in the document that he confessed was fraudulent? That's the one where he said he worked for the leather company. Yes. And yet the, I guess, two documents that said one was a graduation certificate about chemistry and the other was some kind of a teacher permit or something. As far as I know, those were not per se contradicted. Is that correct? You're talking about? The latter two. The latter two. Right. They were not. So if the one is false, what do we do with what's left over that was not contradicted? Do we give any credibility to the graduation certificate and the, I guess, teacher credential, I guess we'd call it? Well, you know, again, I cited the case in Aiken v. INS, which distinguished between false documents that were used to escape a country of persecution and false documents used to bolster an asylum claim. And as he testified, you know, he hired the service of a middleman to help him alter the House of Registers so that he could get a visa to come to the United States and essentially flee persecution. And so that is why that, the fact that he's fleeing persecution, then that does not impart any lack of credibility to him, and therefore the two documents that we're talking about in terms of the chemistry teacher, those should be given full weight. And they were admitted into the record without objection. And again, the judge did not find any lack of credibility or any indicia of unreliability for those two particular documents. Do you want to save any of your time, counsel? It's up to you. Very well. Thank you, Judge. Good morning. Good morning. May it please the Court, my name is Jocelyn Wright. I'm here on behalf of Respondent D, United States Attorney General. As the applicant for asylum, Petitioner bore the burden of establishing his claim with credible evidence, and in this case he didn't do so. The Board of Immigration Appeals properly relied on his admission, and it's undisputed, he admitted that he submitted into the record an altered household register. And in fact, he submitted two household registers into the record, one that was dated November of 2010, and another one that was the basic November 2010 household register, but with amendments made in 2013 after his father died. Do you have any theory as to, I mean, I guess what I'm struggling with is that the, I'm just trying to use common sense, why would he falsify his occupation? It doesn't help his claim, does it? Not that I'm aware of, Your Honor. But it doesn't matter for purposes of the totality of circumstances test for credibility under the Real ID Act. It doesn't matter if it's done to enhance his claim. The fact is that it is a falsehood and it was an altered fraudulent document. Okay, but I'm just saying, to find him not credible here, the IJ and the BIA, they have to, I guess I'm just trying to put together the theory. It's that because he does, as your opponent pointed out, he does submit documents that very sort of credibly state his occupation as something else. So you have to assume that, I don't know, he would have put forward these two conflicting documents. There's no advantage to him if he's going to just make up this whole thing. There's no advantage to claiming that he's one thing on one. So that's what just doesn't make any sense, right? And that all goes to his credibility. I understand that there are those two documents regarding his graduation with a degree in education in chemistry and the teacher certification for teaching chemistry at the high school level. However, he also said to the immigration judge that the middleman that he hired made all the documents for him. And that was the explanation that he proffered to the immigration judge to justify the submission of the altered household registers. He said, I didn't know. I didn't look. It was just submitted by the middleman for me so that I could leave China. And he says that that's why you should not credit the fraudulent document and count it against him because it was used to leave China. He claimed that the middleman also made up the chemistry. No, no, no. I'm not saying that, Your Honor. I kind of misunderstood. No, no. I'm sorry. He did not say that. He suggested that the middleman made all the documents for him to leave China. Okay. But that doesn't make any sense because according to the record, he entered the United States in April of 2011, which means that he had to have applied for his visa. The middleman had to have submitted all of the documents for his visa before April of 2011. But the household registers that he submitted into the record were both basic. The base document were not dated until November of 2011. And the alterations to the second one that he submitted to the court were made in 2013. So it doesn't make any sense for him to say that I submitted those because the middleman gave them to me to expedite my exit from China when they were all produced after he was already given his visa and after he had already come into the United States. So that makes no sense. As to the credibility of the two documents, and as we argued in the brief, the board and the immigration judge understandably looked with skepticism, given the two certifications regarding his chemistry education, when he couldn't even answer the basic questions of what is the difference between different types of chemistry. Not in any of the transcripts did the word carbon come out of his mouth when they were asking him the difference between organic chemistry versus inorganic chemistry. And regardless of how basic your chemistry education might be, as a high school teacher that's a very basic and fundamental precept that he should have been able to just come out and say if he's been teaching high school for, you know, however many four or five years it was before he came to the United States. But doesn't the agency have to make some finding as to the authenticity of those documents in order to say that, sorry, you were lying about your being a chemistry teacher? Well, no, I think that goes two ways. The immigration judge admitted it without objection from the government, but the weight that he accords to that evidence, I think, is something that the court should defer to the immigration judge's weighing of the evidence. Given the totality of the circumstances, the immigration judge and the board appropriately gave less weight to the fact, to those unchallenged documents that he was educated in chemistry, given that he couldn't answer the basic questions. So then your, not your, but the agency's theory is that he really was this quality control person. He knew nothing about chemistry, and yet when it came time to submit, because he's the one who submitted the documents, why would he? And it's, and I want to make clear, it's not the government's theory that he was the quality control employee. I just, the record isn't clear. And because the record isn't clear. But there's something other than a chemistry teacher. Your, the agency's theory is that he did, in fact, know the contents of what was in the household registry. Right. He was making it up when he claimed, oh, it was some middleman's mistake. Well, no, but he is charged with knowledge of the documents that he submits in support of his application. Right. Yeah, but I'm just saying, okay, so he knew that he had stated in this other document that he was some, not a chemistry teacher, and yet he affirmatively introduced into the record two documents which look authentic. I don't know. I mean, there's no finding that, right? And why would anyone do that if they're making this whole story up? That makes no sense. Well, it makes no sense, but nothing in the sense that he was testifying to things that maybe he was told to testify to. It's not clear. And so if there's no rhyme or reason, the burden is on him to reconcile those, the inconsistencies in his own evidence to the immigration judge so that the immigration judge, as the fact finder, is reassured that, okay, this was just an honest mistake. That didn't happen here. When he was confronted with the evidence, he said, oh, that's right, but the middleman did that. It had nothing to do with me. But that, as I just argued earlier, that argument doesn't make any sense. And so it seems like he was just on the fly making things up in order to justify something that he wasn't aware, because he had trusted whoever prepared his asylum application to make sure that everything, all the claims were inconsistent so long as he was well-versed enough in his persecution claim. And I do want to move to that for just one second. The persecution claim, the past persecution claim, was denied solely on the basis of adverse credibility. And so to the extent that the petitioner is relying on his discredited testimony regarding past persecution to lay claim to any kind of rebuttable claim of a presumption of well-founded fear of future persecution or to bolster that claim, he can't do that. Well, that's troubling to me. I get your point about the chemistry. But on the past persecution, I didn't really see that the BIA or the IJ really dealt with the corroborating evidence about the past persecution and really contradicted that. If this petitioner is not credible in one aspect of his claim, but another aspect of his claim was not contradicted by the government and seems to be borne out as past persecution, what do we do with that? Can we reverse on that one and affirm on the other point? I don't think so, Your Honor. I think the court looks to the totality of the circumstances test the agency appropriately applied to assess Mr. Schuh's credibility. But it's broken down by what you're applying for, right? You can have the totality of circumstances with respect to one claim of relief, like asylum, and yet have withholding, have it something different, humanitarian, asylum, and some of that's not involved in this case, I know. But each one has its own criteria for success, right? So can't you have, under the totality of circumstances, fail in one area as a petitioner and yet succeed in another area? I want to make sure I understand your question, Your Honor. In other words, is the totality of the evidence, does that cover the case as a whole or each subpart? In other words, can you have the totality of the evidence regarding, say, asylum, which is not involved in this, does that bar you from being able to find relief under, say, withholding if the evidence is different? Well, I think it may not. But in this case, what he's saying, if I understand your question, you're saying, can we rely on the fact that he's a chemistry teacher in assessing his claim of a well-founded fear of future persecution? Here's what I'm saying. It seems to me that the evidence that his mother, and I forget Leon or whatever the person's name was, about the persecution that he suffered, you know, being beaten up and the like, and his own uncontradicted testimony, in effect, that goes to past persecution, if we don't find that that was contradicted in any way, what difference does it make for that purpose, whether or not he was lying or had, under the totality of the evidence, failed in his burden on the other elements of his claim? Because his credibility permeates his entire claim. And what's your best case authority for that? That credibility is a universal concept. If it lies in one, lies in all, basically. Is that your position? Well, I mean, in this case, his story is his past persecution claim was denied solely on adverse credibility. And if you couldn't believe what he was saying about his story in the past, then there was no need for the immigration judge or the board to credit his evidence in support of that claim. So the government's position is false in one, false in all. Is that right? Well, no. The totality of the circumstances, I mean, that's certainly a part of the test. And it's relevant to it. Other questions? All right, thank you very much. We've got a little time left for the petitioner. Your Honors, I think one of the biggest issues with these types of cases at the lower court level is that we simply just start adding up all the inconsistencies or whatever inconsistencies there may be, and we simply just say, oh, inconsistency, okay, denied, without actually evaluating the inconsistency for truthfulness. I mean, as Your Honor, Judge Watford pointed out, we have to sit there and say, is this person telling the truth? That's the key to credibility. And again, if we're talking about whether he's a chemistry teacher or a quality control for a leather products company, that doesn't help his claim at all either way. And so there's simply no reason for him to be telling an untruth in this matter. And so when we're evaluating an inconsistency, there is an inconsistency here, but what does that say to his overall truthfulness? And we're talking about this inconsistency amongst hours of testimony, and yet we choose this inconsistency to invalidate what was otherwise credible testimony. What do we do with counsel's point that with respect to the false claim, that you're trying to admit it was false, that it was submitted after he had already received what he needed to leave China? In other words, it had no purpose that he said. In other words, he didn't need a middleman to provide the false information so he could leave. What do we do with that? I believe that question was asked by the immigration judge. And what he basically said was, at the time that I left, it was altered. And then after that, I could not then alter it back because I would have to go to the police station to do so. And so that's why the 2013 household register had the same information. He said the reason he gave it was so he could get out of China. He already had the permission. Why did he then submit it to our government thereafter for that reason? Well, I believe that the household register was submitted as part of a package to obtain the visa. And so once—in other words, once the alteration is made, he could not then go back and alter it back. And so it doesn't—when he submitted it, it is what it was, and he could not change it back. All right. Thanks to both counsel for your argument in this case. The case of Xu v. Barr is now submitted.
judges: Graber, M. Smith, Watford